BENJAMIN B. WAGNER
United States Attorney
MICHELE BECKWITH
MICHAEL D. MCCOY
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED

DEC 0 5 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>           v.<br><br>AIMEE SHARON BURGESS,<br><br>                    Defendant. | CASE NO. 2:13-CR-330 KJM<br><br>PLEA AGREEMENT |

## I.      INTRODUCTION

### A.      Scope of Agreement

The superseding information in this case charges the defendant with the following violations: 21 U.S.C. §§ 846 and 841(a)(1), Conspiracy to Distribute and to Possess with Intent to Distribute at least 50 kilograms of Marijuana (Count One) and Conspiracy to Launder Monetary Instruments (Count Two). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.      Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

concerning the criminal activities of defendant, including activities that may not have been charged in the superseding information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

### C.    Package Agreement

The defendant acknowledges and understands that the plea offer reflected in this agreement is a "package agreement." That is, the defendant understands that the offer is contingent upon codefendant Glen Meyers pleading guilty according to the terms of his respective plea offer, which defendant Burgess has reviewed. The defendant understands that if Glen Meyers declines, refuses, or fails to plead guilty according to his respective offer, then, at the option of the government, the defendant will not be allowed to enter a plea of guilty to the offer made to her by the government. Additionally, if defendant Glen Meyers fails or refuses to plead guilty according to the terms of his respective plea offer and the defendant has already entered her plea, then this plea agreement is voidable at the option of the government. In its sole discretion, the government has the ability to withdraw from the plea agreement with the defendant and pursue the original charges as to this defendant. However, the defendant's waiver of rights under Rule 11(f) and Fed. R. Evid. 410, as set forth in Section II.A herein, will not operate.

Recognizing that this is a package agreement, the defendant confirms that she has not been threatened, pressured, or coerced by any other person, including defendant Glen Meyers, to enter into this plea agreement. The defendant also confirms that she enters into this plea agreement voluntarily because she is in fact guilty of the offense to which she is pleading guilty.

///
///

PLEA AGREEMENT                              2

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

The defendant will plead guilty to Count One, Conspiracy to Distribute and to Possess with Intent to Distribute at least 50 kilograms of Marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and Count Two, Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h), of the Superseding Information. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

The defendant acknowledges that the crime to which she is pleading guilty is listed in 18 U.S.C. § 3143(a)(2), and agrees that she will be remanded into custody upon the entry of her plea.

### B. Special Assessment

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### C. Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. The government

1 will no longer be bound by its representations to the defendant concerning the limits on criminal
2 prosecution and sentencing as set forth herein.  One way a defendant violates the plea agreement is to
3 commit any crime or provide any statement or testimony which proves to be knowingly false,
4 misleading, or materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of
5 justice will also be a violation of the agreement.  The determination whether the defendant has violated
6 the plea agreement shall be decided under a probable cause standard.

7   If the defendant violates the plea agreement, withdraws her plea, or tries to withdraw her plea,
8 the government shall have the right: (1) to prosecute the defendant on any of the counts to which she
9 pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3)
10 to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall
11 thereafter be subject to prosecution for any federal criminal violation of which the government has
12 knowledge, including perjury, false statements, and obstruction of justice.  The decision to pursue any or
13 all of these options is solely in the discretion of the United States Attorney's Office.

14   By signing this plea agreement, the defendant agrees to waive any objections, motions, and
15 defenses that the defendant might have to the government's decision to exercise the options stated in the
16 previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as
17 of the date of this plea agreement may be commenced in accordance with this paragraph,
18 notwithstanding the expiration of the statute of limitations between the signing of this plea agreement
19 and the commencement of any such prosecutions.  The defendant agrees not to raise any objections
20 based on the passage of time with respect to such counts including, but not limited to, any statutes of
21 limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth
22 Amendment to any counts that were not time-barred as of the date of this plea agreement.

23   In addition: (1) all statements made by the defendant to the government or other designated law
24 enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,
25 whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or
26 administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no
27 claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal
28 Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### D.    Forfeiture

The defendant agrees to forfeit to the United States voluntarily and immediately any right, title, and interest she may have to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853. Those assets include, but are not limited to, the following:

1.   Real Property located at 3734 Laurel Street, Shasta Lake, California;

2.   The currency claimed by defendant on December 17, 2013;

3.   Any and all funds maintained at Scottrade brokerage account number 55530461, held in the name Glen E. Meyers;

4.   Any and all funds maintained at E*Trade Securities LLC account number 67575072 held in the name of Glen E. Meyers; and,

5.   Any and all funds maintained at JP Morgan Chase account number 914633045.

The defendant agrees that the listed assets constitute proceeds traceable to violations of 18 U.S.C. § 1956, 31 U.S.C. § 5324, and 21 U.S.C. § 841.

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell, transfer, convey, or otherwise dispose of any of her assets, including but not limited to, the above-listed assets. The defendant also agrees to sign a Stipulation for Final Judgment of Forfeiture in United States v. Real Property located at 3734 Laurel Street, Shasta Lake, California, et al., 2:13-cv-2326-KJM-DAD, forfeiting to the United States all of her right, title, and interest in the defendant currency to which she filed a claim. This stipulation must be signed no later than thirty days after entering this plea agreement.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive her right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives her right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses

PLEA AGREEMENT                                              5

to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

### E. Asset Disclosure

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that this plea agreement is voidable at the option of the government if the defendant fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time.

### III. THE GOVERNMENT'S OBLIGATIONS

### A. Dismissals

The government agrees to move, at the time of sentencing, to dismiss without prejudice the pending superseding information. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.C (Defendant's Violation of Plea Agreement), VI.B (Guidelines Calculations), and VII.B (Waiver of Appeal) herein.

### B. Recommendations

#### 1. Incarceration Range

The government will recommend that the defendant be sentenced to a term of imprisonment within the applicable guideline range for her offenses as determined by the Court.

#### 2. Acceptance of responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if she clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1.

1   This includes the defendant meeting with and assisting the probation officer in the preparation of the
2   pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in
3   conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the
4   preparation of the pre-sentence report or during the sentencing proceeding.

### C. Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty.

For Count One, Conspiracy to Distribute and to Possess with Intent to Distribute at least 50 kilograms of Marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1):

1.  First, beginning no later than in or about August 2010, and continuing through in or about September 2013, there was an agreement between two or more persons to distribute and to possess with intent to distribute at least 50 kilograms of marijuana; and
2.  Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

As to Count Two, Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h):

1.  Two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1956; and
2.  Second, the defendant knew about the plan's unlawful purpose and willfully joined in it.

The defendant fully understands the nature and elements of the crimes charged in the superseding information to which she is pleading guilty, together with the possible defenses thereto, and

has discussed them with her attorney.

## V. MAXIMUM SENTENCE

### A. Maximum penalty

The maximum sentence that the Court can impose for Count One is twenty years of incarceration, a fine of $1,000,000, a three-year term of supervised release, and a special assessment of $100. In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862. The maximum sentence that the Court can impose for Count Two is thirty years of incarceration, a fine of $250,000, a special assessment of $100, and a three-year period of supervised release.

### B. Violations of Supervised Release

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two years of additional imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Guideline Calculations

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation Office,

or the parties:

1. <u>Base Offense Level</u>: The base offense level is 28. For Count One, the base offense level is 26 under U.S.S.G. § 2D1.1(c)(7), based on approximately 180 kilograms of marijuana involved in the offense. For Count Five, the base offense level is 26 under § 2S1.1(a)(1). An additional two points are added under § 2S1.1(b)(2)(B) for the § 1956 offense. The counts group under § 3D1.2(d), so the base offense level is 28, under § 3D1.3, n.3.

2. <u>Acceptance of Responsibility</u>: See paragraph III.B.2 above

3. <u>Role Adjustment</u>: The defendant may argue that she is eligible for a two-point "minor role" adjustment under U.S.S.G. § 3B1.2(b). The government is free to argue that this adjustment does not apply.

4. <u>Criminal History</u>: The parties estimate that the defendant's criminal history category is II.

5. <u>Resulting Guidelines Range</u>: 63-78 months, after accounting for acceptance of responsibility. If the Court finds that the defendant was a "minor participant" under 3B1.2(b), the range would be 51-63 months.

The U.S. Sentencing Commission is considering a proposal that would reduce the Base Offense Level (BOL) under Sentencing Guideline § 2D1.1 by two levels for most drug cases effective on or about November 1, 2014. If adopted, the proposal may be made retroactive to cases sentenced before that date. The government and defendant agree that if sentencing in this case occurs prior to November 1, 2014, and neither the Sentencing Commission nor the Congress has rejected the proposed amendment before sentencing:

(a) This Court should calculate the guideline range without regard to the proposed amendment;

(b) In addition to any other arguments or requests the defendant is permitted to make under the terms of this plea agreement, the defendant is free to request a downward variance equivalent to the reduction in final guideline range he would receive were the proposed amendment effective on the date of sentencing;[1] and,

---

[1] The proposed amendment generally reduces the base offense level (BOL) by two levels. However, a level 38 still exists but requires a larger amount of drugs to apply. Also, changing the BOL by two points does not always result in a lower final offense level or lower Guideline Range. For example, if the career criminal guideline (USSG § 4B1.1) is applicable, the proposed amendment has no impact on the final Guideline Range. Applicable statutory mandatory-minimum sentences might impact the final guideline range as well. The defendant understands, then, that a two-level reduction in BOL might not result in a two-level reduction of the final offense level. Moreover, the sentencing judge is under no obligation to grant the requested variance.

PLEA AGREEMENT              9

(c) The government will not oppose such downward variance request other than: (1) to the extent the government disagrees as to its correct calculation, and (2) provided that the defendant agrees that if the Court grants the requested variance he will not seek a further reduction in his guideline range or sentence based on the proposed amendment in any manner, including but not limited to, in a motion pursuant to 18 U.S.C. § 3582(c) or 28 U.S.C. §§ 2255 or 2241, an administrative petition, or any other action or filing.

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a). The government may argue for any sentence within the applicable guideline range as determined by the Court.

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

### B.   Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea/pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any

right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate her plea, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in paragraph II.C (Defendant's Violation of Plea Agreement) herein.

### C.  Waiver of any Conflicts of Interest

The defendant acknowledges that codefendant Glen Meyers was previously represented by Attorney Joseph Gazzigli in this case, albeit pre-indictment. In connection with that representation, Meyers and Mr. Gazzigli had prior discussions with the government about the monetary transactions charged in the indictment and superseding information. Those discussions were not covered by any proffer or immunity agreement.

Mr. Gazzigli currently represents defendant Burgess. By entering into this plea agreement, the defendant acknowledges the potential conflict of interest created by Mr. Gazzigli's successive representation of her and Glen Meyers in this case, and she hereby waives any conflict posed by, or caused by, such representation. The defendant understands all of the implications and risks created by Mr. Gazzigli's representation of both her and Meyers, and she has discussed these issues at length with her attorney, as well as on the record, in court, before Magistrate Judge Kendall J. Newman. Defendant makes this waiver knowingly, intelligently, and voluntarily.

///
///
///
///
///
///
///
///

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 12/5/14

JOSEPH GAZZIGLI
Counsel for Defendant

### B. Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 12/5/14

AIMEE SHARON BURGESS,
Defendant

///
///
///
///
///

**C.   Attorney for the United States**

I accept and agree to this plea agreement on behalf of the government.

Dated: June 20, 2014

BENJAMIN B. WAGNER
United States Attorney

By: /s/ MICHELE BECKWITH
MICHELE BECKWITH
Assistant United States Attorney

**EXHIBIT "A"**
**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Beginning no later than in or about March 2010, defendant AIMEE SHARON BURGESS and defendant Glen Meyers opened a bank account with Golden One Credit Union in Redding, California, in the State and Eastern District of California. They were the only authorized signers on the account, until Meyers was removed from the account in about April 2011.

Bank records show that defendants BURGESS and Meyers made, or caused to be made, approximately $423,550 in structured cash deposits into the Golden One account between August 13, 2010 and April 12, 2011. This money came from the sale of marijuana, including marijuana that the defendants shipped from California to Pennsylvania for sale. After defendants Meyers, BURGESS, and Kash arranged for the marijuana to be shipped to the Pittsburgh, Pennsylvania area, they would cause the drug proceeds to be deposited into this Golden One bank account, as well as other bank accounts under their control. In almost every instance, the cash deposited in Pennsylvania was almost immediately withdrawn in Redding, California, where Meyers and BURGESS resided. Every single cash deposit into the Golden One account was in an amount below the currency transaction reporting requirement under federal law, i.e., it was below $10,000.01.

Defendants BURGESS, Meyers, and Kash knew that these financial transactions involved the proceeds of marijuana sales, and they agreed to conduct, and did conduct, these transactions in order to avoid the currency transaction reporting requirement under federal law and to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

In addition to conspiring to launder drug proceeds, defendant BURGESS conspired with her codefendants to manufacture and distribute at least 50 kilograms of marijuana. On or about May 9, 2013, defendant Massery delivered a parcel containing approximately 170 pounds of marijuana to YRC Freight in Benicia, California, which is in the State and Eastern District of California. He directed the parcel to be shipped to McKees Rocks, Pennsylvania. Massery provided a return address of "Pacific Supplement" 17900 Construction Way, Redding, CA 96001. Although there is no legitimate business connected with this address, the address is, in fact, a building that defendants BURGESS, Meyers, and

Kash use to grow marijuana.

The parcel that Massery delivered to YRC in Benecia, California in May 2013 was ultimately turned over to the Pennsylvania State Police for a controlled delivery. On or about May 15, 2013, Massery picked up the parcel using a UHaul van and he drove it to a motel where he and defendants Meyers, BURGESS, and Kash were staying. Later that day, officers observed the defendants drive to a local casino, where Meyers, BURGESS, and Kash met with a Pennsylvania woman who later admitted to helping them launder drug proceeds. Officers surveilled the defendants for the remainder of the day and the next morning.

On or about May 16, 2013, officers saw Massery and Kash leave the hotel in the Uhaul, followed by Meyers and BURGESS in a different car. They drove to a garage in Allenport, Pennsylvania, where they were arrested. Officers obtained a search warrant and searched the garage. They found the YRC parcel that Massery had shipped from Benecia, an additional thirty pounds of marijuana, multiple telephones, and over $20,000 in cash.

Officers identified another storage unit used by the defendants, where they found approximately thirty-five pounds of marijuana, a digital scale, cell phones and other items. They also found a safe, which contained approximately seventeen pounds of marijuana, as well as three bags of hashish. Officers also obtained a search warrant for the hotel rooms where the defendants were staying and the cars they were driving. They found cell phones and a mini iPad, as well as $17,300 in cash.

On September 17, 2013, the IRS, together with local officers, executed three federal search warrants on properties owned or controlled by Meyers and/or BURGESS. The first property, 3734 Laurel Street, Shasta Lake, CA, is where Meyers and BURGESS resided together with BURGESS's minor children. During the search of this property, officers found approximately twenty pounds of processed marijuana and at least seven live marijuana plants. Most of the marijuana was found in the defendants' shared bedroom. Officers also found six guns in the bedroom. One of them – a Smith & Wesson – was loaded.

Officers also searched 21915 Elk Trail W., Redding, CA, a parcel of land owned by defendant Meyers. They had previously observed an outdoor marijuana grow on this property through aerial surveillance. There were approximately ninety marijuana plants found at that location.

Officers also searched 17900 Construction Way, Suite D, Redding, California, which Meyers and BURGESS rent. It is a large, industrial-sized garage. Officers found approximately 490 marijuana plants in this location. Defendant Kash was in the garage at the time of the search.

Defendant BURGESS agrees that she conspired with defendants Meyers, Kash, and Massery to distribute at least 50 kilograms of marijuana, and that marijuana is a schedule I controlled substance.

Dated: 12/5/14

AIMEE SHARON BURGESS,
Defendant